Jon A. **FRYKBERG,** Debtor.

Jon A. Frykberg, Plaintiff–Appellant,

v.

**JPMorgan Chase Bank, National Association, Defendant–Appellee.**

BAP No. MW 12–050.
Bankruptcy No. 10–43546–HJB.
Adversary No. 10–04140–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

April 18, 2013.

Laird J. Heal, Esq., on brief for Plaintiff–Appellant.

Daniel J. Finnegan, Esq., Springfield, MA, and Donn A. Randall, Esq., Boston, MA, on brief for Defendant–Appellee.

Before LAMOUTTE, KORNREICH, and CABÁN, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

The debtor-plaintiff, Jon A. Frykberg (the "Debtor"), appeals from a bankruptcy court order granting summary judgment in favor of JPMorgan Chase Bank, NA ("Chase") as to all counts on the ground that federal law preempts all of the Debtor's causes of action. For the reasons set forth below, we **AFFIRM** the order.

### BACKGROUND

The Debtor filed a petition for chapter 13 relief in July 2010. He subsequently filed a three-count adversary complaint against Chase relating to a 2004 home mortgage which he gave to Washington Mutual Bank, F.A. ("WaMu"), to secure a $269,500.00 note.[1] After the loan transaction, Chase acquired from the Federal Deposit and Insurance Corporation ("FDIC") certain of WaMu's assets, including the Debtor's note.

The Debtor complained in Count I that WaMu, the loan originator, failed to provide him with the number of copies of the Notice of Right to Cancel required by Mass. Gen. Laws ch. 140D, § 8.[2] He also alleged that WaMu violated that statute by providing him with an inaccurate Truth in Lending Disclosure Statement. Accordingly, in Count I, the Debtor sought rescission of the loan, damages, and attorneys' fees. In Count II, he requested a determination that he and his wife held the subject property free and clear of the mortgage. In Count III, he alleged that the loan was a "high-cost home loan" within the meaning of Mass. Gen. Laws ch. 183C, § 2,[3] and that he did not receive credit counseling as required for such loans by that statute. Accordingly, he requested an order declaring the loan unenforceable. The Debtor did not assert any claim based upon federal law.

After answering the complaint, Chase filed a motion for summary judgment as to all counts, which the Debtor opposed. Relying on *Hollingworth v. Beneficial Mass., Inc. (In re Hollingworth)*, 453 B.R. 32 (Bankr.D.Mass.2011), Chase argued for the first time in its reply to the Debtor's opposition that federal law preempted the Debtor's state law claims. At the September 2011 hearing on the summary judgment motion, the Debtor complained that Chase had neglected to raise the preemption issue in its motion. The court therefore granted Chase additional time to amend the motion to add its preemption claims, and allowed the Debtor time to respond thereto.

In its amended summary judgment motion which followed, Chase primarily argued: (1) the federal Home Owner's Loan

---

**1.** The Debtor also alleged that following the loan transaction, he quitclaimed an interest in the real estate to his wife.

**2.** Mass. Gen. Laws ch. 140D is known as the Massachusetts Consumer Credit Cost Disclosure Act.

**3.** Mass. Gen. Laws ch. 183C is known as the Massachusetts Predatory Home Loan Practices Act.

Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, preempted the Debtor's claims under both Mass. Gen. Laws ch. 183C and ch. 140D; and (2) the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, separately preempted the Debtor's Mass. Gen. Laws ch. 183C claims. Chase further argued that even if federal law did not preempt the Debtor's state law claims, the Debtor could not establish a claim under either Mass. Gen. Laws ch. 183C or Mass. Gen. Laws ch. 140D. Lastly, Chase asserted that the Debtor was not entitled to relief from Chase because the FDIC retained liability related to or arising out of the Debtor's loan when it transferred the loan to Chase.

The Debtor opposed the amended summary judgment motion, arguing, among other things, that: (1) Chase's preemption argument was untimely; (2) the subject loan was a high-cost home loan under Massachusetts law; (3) the failure to provide two copies of the Notice of Right to Cancel, standing alone, was sufficient to support an extended right of rescission; and (4) Chase understated the amount financed.

After the hearing, the bankruptcy court granted the amended summary judgment motion, ruling from the bench as follows:

> I am in this case fully persuaded by the arguments made by [Chase], so much so that I'm simply going to adopt the arguments made by [Chase] in its Memorandum of Law ... except with respect to one section ... that suggests that delivering only one copy of a Notice of Right to Cancel is a technical defect which ought to be seen as ministerial and not material. ... In light of the fact that I've adopted the other positions taken by Chase, my omission of that particular argument is somewhat immaterial.

The next day, the court entered an order granting Chase's amended motion for summary judgment. The Debtor moved for reconsideration which the court denied as untimely. Thereafter, the court entered final judgment in favor of Chase on all counts of the complaint and this appeal followed. On appeal, the parties reiterate the arguments presented below.[4]

### *JURISDICTION*

■ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (quoting *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted)). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *In re Bank of New England Corp.*, 218 B.R. at 645. "An order granting summary judgment, where no counts remain, is a final order." *DeGiacomo v. Traverse (In re Traverse)*, 485 B.R. 815, 817 (1st Cir. BAP 2013) (citation omitted). Thus, we have jurisdiction.

### *STANDARD OF REVIEW*

■■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). "We apply a *de novo* standard of review to orders granting summary

---

4. The Debtor does not appeal the denial of reconsideration.

judgment." *In re Traverse*, 485 B.R. at 819.

## DISCUSSION

### I. The Summary Judgment Standard

"Under Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 7056, '[i]t is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law.'" *B.B. v. Bradley (In re Bradley)*, 466 B.R. 582, 585 (1st Cir. BAP 2012) (quoting *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir.1994)). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in the original).

There is no genuine issue of any material fact concerning the preemption issue. Therefore, entry of summary judgment by the bankruptcy court was appropriate.

### II. The Preemption Doctrine

■■■■ "The doctrine of federal preemption is rooted in the Supremacy Clause, which provides that 'the laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution of any State to the Contrary notwithstanding.'" *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 530 (1st Cir.2007) (quoting U.S. Const. art. VI, cl. 2). "Federal statutes and the regulations adopted thereunder have equal preemptive effect." *Id.* (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159–60, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). A federal statute or regulation may preempt a state regulatory scheme in three relevant ways.[5] *Id.*

First, Congress can expressly preempt state law by explicit statutory language. Second, Congress can enact a regulatory scheme so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, also known as "field preemption". In such cases, state regulation will be invalid even if it does not directly conflict with federal laws or regulations. Third, federal law may be in irreconcilable conflict with state law, also known as "conflict preemption." This may occur when compliance with both state and federal statutes and regulations is a physical impossibility, or when compliance with the state statute would frustrate the purposes of the federal scheme.

*Id.* at 530–31 (internal quotations and citations omitted).

### III. HOLA and Preemption of State Law

■■■■ Congress enacted HOLA in 1933 in reaction to the Great Depression, and "[i]ts goal was 'to provide emergency relief with respect to home mortgage indebtedness' through 'a radical and comprehensive response to the inadequacies of the existing state systems.'" *Sovereign Bank v. Sturgis*, 863 F.Supp.2d 75, 91 (D.Mass.

---

**5.** A fourth type of preemption acknowledged by the First Circuit, "'complete preemption,' exists where a federal cause of action has completely supplanted a state law cause of action, and thus converts the state claim into a federal claim." *Ayotte*, 488 F.3d at 531 n. 4 (citation omitted). "Complete preemption allows a plaintiff to bring a previously state-law claim into federal court under federal question jurisdiction...." *Id.* (citation omitted). The doctrine of complete preemption is inapplicable here.

2012) (quoting *de la Cuesta,* 458 U.S. at 159–60, 102 S.Ct. 3014). "The Act provided for the creation of a system of federal savings and loan associations, which would be regulated ... so as to ensure their vitality as permanent associations to promote the thrift of the people in a cooperative manner, to finance their homes and the homes of their neighbors." *de la Cuesta,* 458 U.S. at 159–60, 102 S.Ct. 3014 (citations omitted). "In 1989, Congress created the Office of Thrift Supervision ('OTS') and gave its director broad authority under HOLA to regulate and 'govern the powers and operations of every Federal savings and loan association from its cradle to its corporate grave.'" *Sturgis,* 863 F.Supp.2d at 91 (quoting *de la Cuesta,* 458 U.S. at 145, 102 S.Ct. 3014). "This is an extremely broad grant of power that provides ample authority for the [OTS] Director's efforts to enforce consistent, nationwide regulations affecting lending practices, by preempt[ion]." *Id.* (internal quotations and citation omitted) (alterations in original). As the Supreme Court noted, it "'would have been difficult for Congress to give the [OTS] a broader mandate.'" *Id.* (quoting *Ayotte,* 488 F.3d at 535) (quoting *de la Cuesta,* 458 U.S. at 161, 102 S.Ct. 3014). The First Circuit has noted that OTS regulations are "'preemptive of any state law purporting to address the subject of the operations of a Federal savings association.'" *Ayotte,* 488 F.3d at 535 (quoting 12 C.F.R. § 545.2). The OTS regulations explicitly preempt the field of lending regulations as follows:

To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

*Sturgis,* 863 F.Supp.2d at 91 (quoting 12 C.F.R. § 560.2(a)).[6]

"The OTS has provided a framework to analyze whether a specific state law is preempted by HOLA and by 12 C.F.R. [§ ] 560.2." *Id.* at 92.

"[T]he first step [is] to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted." 61 Fed.Reg. 50951–01, 50966. In paragraph (b), the OTS provides a number of examples of types of state laws that are definitively preempted. These include laws "purporting to impose requirements regarding," *inter alia,* "[d]isclosure and advertising" and "[p]rocessing, origination, servicing, sale or purchase

---

**6.** In *Sturgis,* the district court noted, however:

The Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. 111–203 (2010), significantly diminished the extent to which HOLA and its implementing regulations may preempt state law. *See* Dodd–Frank §§ 1044, 1046 (providing that HOLA preemption no longer occupies the field of banking regulation, and limiting preemp-

tion to specific conflicts between state and federal law).

836 F.Supp.2d at 91 n. 9. As *Sturgis* further makes clear, because the Debtor's loan in the instant case was consummated before Dodd–Frank was enacted or effective, the new preemption standard is inapplicable here. *See id.*

of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b).

If the state law is none of the types listed in paragraph (b), "the next question is whether the law affects lending." 61 Fed.Reg. 50951–01, 50966. If it does, a presumption of preemption arises that is reversible "only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." Id. at 50966–67. Paragraph (c) states that state laws of particular types, including contract and commercial law, real property law, and tort law "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. [§ ] 560.2(c).

Sturgis, 863 F.Supp.2d at 92.

### A. HOLA and the Preemption of Mass. Gen. Laws ch. 140D

 Applying the above analysis to Mass. Gen. Laws ch. 140D, the district court in Sturgis concluded that statute was "one of the types of law definitively preempted under" 12 C.F.R. § 560.2(b). Id. In reaching this conclusion, the court noted, first, that Mass. Gen. Laws ch. 140D is "a law regulating disclosures regarding credit," as its name clearly indicates, and, second, that 12 C.F.R. § 560.2(b)(9) explicitly states that HOLA preempts state laws which purport to impose requirements regarding:

Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of reports to borrowers or applicants . . . .

Id. (quoting 12 C.F.R. § 560.2(b)(9)).

Sturgis' rationale for concluding that Mass. Gen. Laws ch. 140D is preempted by HOLA and 12 C.F.R. § 560.2(b)(9) is consistent with the preemption analytical framework established by the OTS. Other courts agree with this preemption approach. As one Massachusetts bankruptcy court recently held: "[A]ny state statute which imposes disclosure requirements and protections for high-cost loans originated by federally chartered institutions is preempted by federal law." Thomas v. CitiMortgage, Inc. (In re Thomas), 476 B.R. 691, 697 (Bankr.D.Mass.2012).

Here, as in Sturgis, there is no doubt that Chase is a national bank. See Hollingworth, 453 B.R. at 35 (citations omitted) (stating "[c]ourts may take judicial notice that a bank is a national bank if [it] is described by name as a 'national' bank."). As Sturgis correctly observed, Mass. Gen. Laws ch. 140D purports to impose requirements regarding disclosures. We therefore similarly conclude under the OTS test for preemption that the Massachusetts law is explicitly preempted by HOLA and 12 C.F.R. § 560.2(b)(9). See Sturgis, 863 F.Supp.2d at 93. Indeed, this circuit's admonition that OTS regulations are "preemptive of any state law purporting to address the subject of the operations of a Federal savings association" compels this conclusion. Ayotte, 488 F.3d at 535 (quoting 12 C.F.R. § 545.2).

### B. HOLA and Preemption of Mass. Gen. Laws ch. 183C

 Mass. Gen. Laws ch. 183C requires lenders to receive certification that their borrowers received counseling from an approved third-party prior to finalizing a "high-cost home mortgage loan," in order

for the loan to be enforceable. Mass. Gen. Laws ch. 183C, § 3. The statute defines "high[-]cost" home mortgage loans as those in which the points and fees exceed the greater of 5 percent of the total financed amount or $400. Mass. Gen. Laws ch. 183C, § 2.

Although the First Circuit has not addressed whether HOLA preempts Mass. Gen. Laws ch. 183C, we are not without guidance. In *Thomas, supra,* the court answered the question in the affirmative, based on the principle that 12 C.F.R. § 560.2 "occup[ies] the field in connection with the lending operations of federal thrifts." *In re Thomas,* 476 B.R. at 695. The court also observed:

> The OTS has issued interpretive letters concluding that the anti-predatory lending laws of New York, New Mexico, New Jersey, and Georgia are preempted by the federal scheme, and courts have generally adopted the preemption approach. *See, e.g., Jarbo v. BAC Home Loan Servicing,* 2010 WL 5173825 (E.D.Mich.[Dec. 15, 2010]); *Coppes v. Wachovia Mortg. Corp.,* 2010 WL 4483817 (E.D.Cal.[Nov. 1, 2010]).

*Id.* (citation omitted). Thus, based on a tacit recognition of "field preemption" principles, the court ruled that "federal thrifts are not subject to [Mass. Gen. Laws ch.] 183C with respect to loans they originate." *Id.*

Because 12 C.F.R. § 560.2 "occpu[ies] the field in connection with the lending operations of federal thrifts," *id.,* we agree that HOLA preempts the Debtor's claim under Mass. Gen. Laws ch. 183C.

## IV. TILA and Preemption of State Law

■■■ Congress enacted TILA "to ensure that the terms of consumer credit are disclosed in a meaningful way so that consumers can knowledgeably compare credit terms." 61 A.L.R. Fed.2d § 505 (2012). The statute requires, among other things, that a creditor disclose the cost of credit as both a dollar amount and an annual percentage rate. *Id.* In 1994, Congress amended TILA "with the enactment of the Home Ownership and Equity Protection Act ('HOEPA') (15 U.S.C. § 1639)." *In re Thomas,* 476 B.R. at 695–96. HOEPA requires additional disclosures for certain types of mortgage loans, "generally based on the annual percentage rate or the total amount of points and fees paid." *Id.* (citing 15 U.S.C. § 1602(bb)). HOEPA's additional protections and disclosures apply when the total amount of points and fees charged exceed the greater of 8 percent of the total loan amount or $400. *Id.*

■■■ Loans subject to HOEPA but which fail to comply with its provisions are subject to rescission under TILA's rescission provisions. 15 U.S.C. § 1635(b). The statute includes an express preemption provision, however, which provides that TILA does not "annul, alter, or affect" any state laws relating to the disclosure of information in connection with credit transactions except to the extent that such laws are inconsistent with the Act and then only to the extent of such inconsistency. 15 U.S.C. § 1610(a)(1).

## A. TILA and Preemption of Mass. Gen. Laws ch. 183C

■■■ Mass. Gen. Laws ch. 183C conflicts with TILA, to the extent that the former establishes a 5 percent threshold in order for a loan transaction to qualify as a high-cost home mortgage loan, while the latter establishes a higher, 8 percent threshold. *See* Mass. Gen. Laws ch. 183C, § 2; *In re Thomas,* 476 B.R. at 696.

Thus, in *Hollingworth, supra,* confronted with the question of whether TILA preempts Mass. Gen. Laws ch. 183C, the

court answered the question in the affirmative, reasoning that "TILA provides that state laws inconsistent with the provisions of TILA are preempted to the extent of the inconsistency." *Hollingworth*, 453 B.R. at 35 (citing 15 U.S.C. § 1610(a)(1)). In further support of its conclusion that TILA preempts Mass. Gen. Laws ch. 183C, the bankruptcy court observed:

> In addition, Congress has given the Office of the Comptroller of the Currency ("OCC") [7] the authority to issue regulations preempting state law. *CSBS v. Conover*, 710 F.2d 878, 878 (D.C.Cir. 1983) (holding 12 U.S.C. § 93a grants the OCC the power to preempt inconsistent state laws). In carrying out this authority, the OCC may issue opinion letters or interpretive rules concluding that federal law preempts the application of any state consumer protection or fair lending statute to a national bank. *Salvador v. Bank of America, N.A. (In re Salvador)*, [456 B.R. 610] (Bankr. D.Ga.2011) (citing 12 U.S.C. § 43(a), (b), 1813(q)(1)).
>
> On August 5, 2003, the OCC issued a Preemption Determination and Order concluding that the Georgia Fair Lending Act ("GAFLA") provisions affecting national bank real estate lending were preempted by TILA. Preemption Determination and Order, 68 Fed.Reg. 46.264, 46.264 (Aug. 5, 2003). The OCC order preempted the GAFLA provision establishing 5% as the threshold for loans to be classified as high-cost loans. *Id.* at 46.265. It is therefore clear that state laws defining high-cost loans in a manner inconsistent with TILA's 8% threshold are preempted by TILA.

*In re Hollingworth*, 453 B.R. at 35 (footnote omitted). Hollingworth makes clear that because of—and to the extent of—the inconsistency between TILA and Mass. Gen. Laws ch. 183C, the federal statute preempts the state legislation.

### B. TILA and the Preemption of Mass. Gen. Laws ch. 140D

■ Mass. Gen. Laws § 140D is the state analog to TILA, "and its provisions track those of the TILA nearly verbatim." *Smith–Pena v. Wells Fargo Bank, N.A. (In re Smith–Pena)*, 484 B.R. 512, 517 (Bankr.D.Mass.2013). *Hollingworth* is also instructive on the issue of whether TILA preempts Mass. Gen. Laws ch. 140D. There, the court rejected the debtor's argument that certain Massachusetts credit transactions were exempt from TILA, relying on the language of an order issued by the Federal Reserve, which provides:

> [C]redit transactions that are subject to chapter 140D (Consumer Credit Costs Disclosures) of the General Laws of Massachusetts, established by chapter 733 of the Acts of 1981, and its implementing regulations are exempt from chapter 2 (credit transactions) and chapter 4 (credit billing) of the federal Truth in Lending Act. **This exemption does not apply to transactions in which a federally chartered institution is a creditor.**

*In re Hollingworth*, 453 B.R. at 36 (emphasis and alteration in original) (quoting *Consumer Leasing, Truth in Lending; Order Granting Exemptions to the States of Massachusetts, Oklahoma and Wyoming*, 47 Fed.Reg. 42, 171 (Sept. 22, 1982)). As the above regulation explicitly

**7.** Since the enactment of the Dodd–Frank Wall Street Reform and Consumer Protection Act, the OTS has been merged into the OCC, to "promulgate regulations providing 'for the organization, incorporation, examination, operation, and regulation' of federal savings association and federal savings banks." *In re Thomas*, 476 B.R. at 695 (quoting Dodd–Frank, Pub.L. 111–203, 124 Stat. § 1464(a)).

indicates, and *Hollingworth* correctly concluded, "if a creditor is a federally chartered institution …, its transactions in Massachusetts are not exempt from TILA." *Id.* Because Chase is a national bank, it follows that the mortgage loan transaction in this case is not exempt from TILA.

### CONCLUSION

For the above reasons, we conclude that all causes of action in the Debtor's complaint are preempted by HOLA and TILA, and neither Mass. Gen. Laws ch. 183C nor ch. 140D apply to the mortgage loan transaction at issue in this case. Accordingly, the bankruptcy court did not err when it granted summary judgment in Chase's favor. As the application of the preemption doctrine supports the bankruptcy court's entry of summary judgment on all counts, we need not address the Debtor's other claims. Therefore, we **AFFIRM** the order.