HARBORHOUSE OF GLOUCESTER, LLC, Debtor.

John O. Desmond, Chapter 7 Trustee, Plaintiff–Appellant/Cross–Appellee,

v.

Raymond C. Green, Inc., as Trustee of Raymond C. Green Trust, Defendant–Appellee/Cross–Appellant.

BAP Nos. MB 14–013, MB 14–014.
Bankruptcy No. 10–23078–HJB.
Adversary No. 11–01351–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

Oct. 29, 2014.

Mark W. Corner, Esq., Boston, MA, on brief for Plaintiff–Appellant/Cross–Appellee.

Michael K. Lane, Esq. and John M. McAuliffe, Esq., Newton, MA, on brief for Defendant–Appellee / Cross–Appellant.

Before LAMOUTTE, DEASY, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

These appeals by the chapter 7 trustee and a secured creditor arise from the bankruptcy court's mixed rulings on the parties' cross-motions for summary judgment in an adversary proceeding commenced by the trustee to challenge the secured creditor's claim to collect on a lost note and enforce the mortgage securing that note. Relying upon the version of § 3–309 of the Uniform Commercial Code enacted in Massachusetts, the bankruptcy

court ruled in favor of the trustee on the note and in favor of the secured creditor on the mortgage. We **AFFIRM** the amended judgment for the reasons set forth below.

## BACKGROUND

The undisputed facts are contained in the bankruptcy court's amended memorandum of decision. *See Desmond v. Raymond C. Green, Inc. (In re Harborhouse of Gloucester, LLC )*, 505 B.R. 365 (Bankr. D.Mass.2014). Taking what is necessary from the record and that memorandum, we begin with an outline of how Raymond C. Green, Inc. came to assert a secured claim in this bankruptcy case.

### Harborhouse's Assumption of Murphy's Mortgage to Hansbury

In 2004, Harborhouse of Gloucester, LLC, acquired property consisting of a restaurant and two residential apartments from Timothy A. Murphy. The purchase price was $1.00 plus the assumption of all encumbrances against the property, including the mortgage given by Murphy to Philip J. Hansbury, trustee of the 90 Rantoul Real Estate Trust, to secure a promissory note. Significantly, there is nothing in the record suggesting that Harborhouse incurred any direct *in personam* liability to Hansbury.

### Hansbury's Assignment of the Murphy Note and Mortgage to CPIC

In 2006, Hansbury assigned his rights in the Murphy note and mortgage to Connect Plus International Corporation ("CPIC"). However, because Hansbury had lost the Murphy note, he gave CPIC an assignment of the mortgage, a lost note affidavit with a copy of the note, and an allonge purporting to transfer rights under the note.[1] But there is nothing in the record

---

1. The lost note affidavit stated: (1) a full and complete copy of the note was attached; (2)

Hansbury was the holder of the note, which had not been transferred, forgiven or dis-

to show that Harborhouse incurred any direct *in personam* liability to CPIC as a result of this transaction.

### CPIC's Assignment of the Murphy Note and Mortgage to Green

In 2007, CPIC borrowed $150,000.00 from Green, trustee of Raymond C. Green Trust. As security for this loan, CPIC assigned its rights under the Murphy note and mortgage to Green. According to the allonge given by CPIC, the balance due on the Murphy note was $602,557.73 when it was assigned to Green. Yet there is nothing in the record to indicate that Harborhouse incurred any personal liability to Green as a consequence of this transaction.

### Bankruptcy, Green's Secured Claim, and the Trustee's Objection

Harborhouse sought relief under chapter 11 on December 1, 2010. Green filed a secured proof of claim in the amount of $795,926.56 as the assignee of the Murphy note and mortgage. Within a year, the case was converted to chapter 7.[2]

The chapter 7 trustee challenged Green's secured claim in an adversary proceeding against Green and CPIC. CPIC did not respond. Following the trustee's unsuccessful attempt at summary judgment, the adversary proceeding was dismissed without prejudice. Sometime later, the bankruptcy court authorized the trustee to sell the property free and clear of liens. Green's disputed lien attached to the proceeds of sale.[3] Later, over Green's objection, the bankruptcy court reinstated the trustee's original adversary proceeding. The trustee then filed his six-count amended complaint against Green and CPIC.[4] Green answered and asserted counterclaims. CPIC defaulted.

### The Rulings Below

The issues were fixed and determined on dueling motions for summary judgment.[5] Neither party was satisfied with

charged, but had been lost or misplaced; (3) the outstanding balance on the note was $360,000.00, exclusive of interest, penalties, and other charges; and (4) the total consideration received by Hansbury for the note and mortgage was $460,000.00.

2. Joseph Braunstein was appointed chapter 11 trustee. Upon the conversion of the case to chapter 7, he became the chapter 7 trustee. Following Braunstein's death, John O. Desmond became successor trustee and the plaintiff in the adversary proceeding contesting Green's claim.

3. The lien of the Massachusetts Department of Revenue also attached to the proceeds of sale. The sale price was $245,000.00. Because the value of the liens exceeded the sale price, it became apparent that benefit to the estate from the sale would turn on the allowance of Green's claim.

4. Count I stated the trustee's objection to Green's claim under Mass. Gen. Laws ch. 106, § 3–309(a). Count II averred that CPIC and Green could not enforce any claim because Hansbury's claims against Murphy were barred by accord and satisfaction.

Count III contained an objection to Green's proof of claim under 11 U.S.C. § 502(b) for the reasons set forth in Counts I and II. Count IV asserted that any payments made by CPIC to Harborhouse on account of the note should be subordinated to the claims of general unsecured creditors. Count V asked the bankruptcy court to preserve the mortgage for the benefit of the bankruptcy estate under 11 U.S.C. § 551. Count VI sought an order under 11 U.S.C. § 552 compelling Green to turnover post-petition rent and other fees.

5. The trustee sought summary judgment on Counts I and III, arguing that Green was neither a holder nor a holder in due course of the note; and, because Green lacked such status it could not enforce the mortgage. The trustee also argued that his claims under Counts II and IV would be moot if he obtained summary judgment on Counts I and III. The essence of the trustee's argument was that Green had no right to collect the note under Mass. Gen. Laws ch. 106, § 3–309(a) or enforce the mortgage because Green had not been in possession of the note when it was lost or misplaced. Green filed a cross-motion for summary judgment on

the outcome and each filed a motion seeking clarification. On those motions, the bankruptcy court issued the amended memorandum of decision, amended orders, and amended judgment that are before us on appeal. The bankruptcy court framed the issue to be whether Green, as the holder of the lost note affidavit, may stand in the shoes of Hansbury, the original holder of the Murphy note or, alternatively, whether Green, as assignee of the mortgage, may assert rights under the mortgage. The decision was split with judgment in favor of the trustee on the note and in favor of Green on the mortgage.[6] Both parties appealed.

## JURISDICTION

Before addressing the merits of an appeal, we must assay our own jurisdiction, even when the litigants themselves do not raise a challenge. We have jurisdiction to hear appeals from the final judgments, orders, and decrees of bankruptcy courts. *See* 28 U.S.C. § 158(a)(1). An order granting summary judgment is a final order where no counts against any defendants remain. *Pendergast v. Mass. Dep't of Rev. (In re Pendergast)*, 510 B.R. 1, 7 (1st Cir. BAP 2014); *Frykberg v. JPMorgan Chase Bank (In re Frykberg)*, 490 B.R. 652, 656 (1st Cir. BAP 2013) (citation omitted). The bankruptcy court's summary judgment is final because it dis-

posed of all counts of the complaint and all counterclaims. Moreover, even though the outcome turned on state law, the adversary proceeding resulted in the adjudication of Green's claim. Claims in bankruptcy are defined under 11 U.S.C. § 101(5) and are allowed under 11 U.S.C. § 502. Consequently, the adversary proceeding arose under title 11 in a case under title 11 and the bankruptcy court acted within its authority when it issued its final judgment. *See* 28 U.S.C. §§ 1334(b) and 157(a), (b)(1) and (2)(B), and (c); Rule 201 of the Local Rules of the United States District Court for the District of Massachusetts. Our jurisdiction is not in doubt.

## STANDARD OF REVIEW

We review an order granting summary judgment *de novo. Scotiabank de P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.)*, 741 F.3d 269, 283 (1st Cir. 2014); *see also Weiss v. Wells Fargo Bank, N.A. (In re Kelley)*, 498 B.R. 392, 396 (1st Cir. BAP 2013) (citations omitted); *Backlund v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11, 17 (1st Cir. BAP 2009) (citations omitted). Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also OneBeacon Am. Ins. Co. v. Commercial Union Assurance*

---

Counts I, II, III, and VI arguing that it was entitled to enforce the note and, if not, that it could surely collect on the underlying obligation. Green also asserted its right to enforce the mortgage against the proceeds of sale whether or not it had standing to collect on the note or the underlying obligation. Green also asked for leave to add or substitute Hansbury as a party in the event the court granted summary judgment in favor of the trustee.

**6.** Specifically, on Counts I, II, III, and VI, the bankruptcy court ruled Green could not enforce the note, but could enforce the mort-

gage against the proceeds of sale and post-petition rental payments, subject to any claims of the trustee under 11 U.S.C. § 506(c). However, because Green lacked the right to collect under the note, these moneys were to be held in trust by Green as collateral for the true holder of the note. The bankruptcy court deemed Count IV to be moot because of CPIC's default. Green was awarded judgment on Count V because the mortgage had not been avoided and, therefore, it could not have been preserved for the benefit of the estate.

*Co. of Can.*, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

## DISCUSSION

The bankruptcy court concluded that Green was not the holder of the Murphy note and, accordingly, that Green had no claim against the bankruptcy estate, *per se.* Additionally, the bankruptcy court determined that CPIC was never a holder of the note. However, because Green possessed a valid legal interest in the Murphy mortgage, it was entitled to hold the proceeds of sale of the property in trust for the true holder of the note. Without deciding the issue, the bankruptcy court pointed to Hansbury as the most likely holder.

The bankruptcy court supported its judgment with a thorough discourse on the negative impact of § 3–309 of Massachusetts' version of the Uniform Commercial Code on Green's ability to enforce the Murphy note and a fine analysis of Green's ability to enforce the mortgage. Our conclusion is that § 3–309 does not apply because Harborhouse never incurred personal liability under the Murphy note. We agree that Green was entitled to hold the proceeds of sale of the property in trust for the true holder of the note. We also agree that the trustee had no interest in

the proceeds because the mortgage had not been avoided.

### The Lost Note

The note was a negotiable instrument under state law. *See* Mass. Gen. Laws ch. 106, § 3–104. As such it was governed by the Uniform Commercial Code as enacted in Massachusetts. Relying upon *Dennis Joslin Co., LLC v. Robinson Broad. Corp.*, 977 F.Supp. 491 (D.D.C.1997); *Marks v. Braunstein*, 439 B.R. 248 (D.Mass.2010), and *Dudley v. S. Va. Univ. (In re Dudley)*, 502 B.R. 259 (Bankr.W.D.Va.2013), the bankruptcy court determined Green was not a person entitled to enforce the note under Mass. Gen. Laws ch. 106, § 3–301 because Green was not a holder, a nonholder in possession, or one entitled to enforce a lost note under Mass. Gen. Laws ch. 106, § 3–309(a).[7] With regard to Green's ability to enforce the lost note under § 3–309(a), the bankruptcy court ruled, like the courts in *Joslin, Marks,* and *Dudley,* that one who seeks to enforce a lost note must be the person who was in possession of the note and entitled to enforce it when the loss of possession occurred.[8] In reaching this conclusion, the bankruptcy court recited the dual standard reiterated in *Marks:* "A party seeking to enforce a note must show that, prior to the

**7.** Mass. Gen. Laws ch. 106, § 3–301 provides: "Person entitled to enforce" an instrument means (i) the holder of the instrument,(ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3–309 or subsection (d) of section 3–418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Mass. Gen. Laws ch. 106, § 3–301.

**8.** Section 3–309(a) of the Uniform Commercial Code, as adopted in Massachusetts, permits enforcement of a lost, destroyed or stolen instrument through secondary evidence if the following criteria are met:

(i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Mass. Gen. Laws ch. 106, § 3–309(a).

loss ... of the note, he 1) was entitled to enforce the instrument and 2) had possession of the instrument." *Marks,* 439 B.R. at 251 (citing *Joslin,* 977 F.Supp. at 495). As further support, the bankruptcy court cited other courts in accord. *See Kemp v. Countrywide Home Loans, Inc. (In re Kemp),* 440 B.R. 624, 626 (Bankr.D.N.J. 2010); *Cadle Co. of Conn., Inc. v. Messick,* No. CV00092983, 30 Conn. L. Rptr. 21, 2001 Conn.Super. LEXIS 1752 (Conn.Super.Ct. Jun. 26, 2001). According to the bankruptcy court, the requirement of actual possession at the time of loss under § 3–309 provides an objective method to determine a party's right to enforce a negotiable instrument and a reliable means to protect a maker from multiple claims.

To be fair, the bankruptcy court noted that the possession requirement under § 3–309 has been eliminated in many jurisdictions through an amendment to the UCC.[9] However, in keeping with *Marks* and *Dudley,* the bankruptcy court stressed that Massachusetts has not adopted that amendment. For that reason, and because, as reflected in *Marks,* "where Article 3 specifically governs a situation, it trumps any common law default rule," the bankruptcy court applied § 3–309 as it was enacted in the Commonwealth and concluded that Green could not enforce the note. *Marks,* 439 B.R. at 251–52 (citing *Union Trust Co. v. McGinty,* 212 Mass. 205, 98 N.E. 679, 680 (1912)). Further, as a consequence of this abrogation principle, the bankruptcy court dismissed the conclusions of several cases going the other way. *See Caddo Parish–Villas South, Ltd. v. Beal Bank, S.S.B. (In re Caddo Parish–Villas South, Ltd.),* 250 F.3d 300, 302 (5th Cir.2001) (applying § 1–103 of the Louisiana UCC which "mandates that, in the absence of a specific provision [in the chapter containing § 3–309], 'the other laws of Louisiana shall apply.'"); *YYY Corp. v. Gazda,* 145 N.H. 53, 761 A.2d 395, 400–01 (2000) (holding that a party's lack of possession of a negotiable instrument will not negate collection under § 3–309 if the obligation is established by a separate, independent agreement); *Bobby D. Assocs. v. DiMarcantonio,* 751 A.2d 673, 675 (Pa.Super.Ct.2000).

██ Ultimately, the bankruptcy court ruled that Green had no *in personam* claim against the bankruptcy estate because Green was not in possession of the note when it disappeared. We agree with this result, but for a very different reason. In our view, Green held no *in personam* claim against the bankruptcy estate because Harborhouse never incurred liability under the Murphy note.

### The Mortgage

Green pressed the alternative argument that it possessed an *in rem* claim against the property which attached to the proceeds of sale. The bankruptcy court concluded that Green was entitled to possession of the proceeds of sale (subject to any recovery the trustee may obtain for costs and expenses under 11 U.S.C. § 506(c)), but only for the benefit of the holder of the note. We adopt the bankruptcy court's legal analysis and affirm the result.

██ Harborhouse acquired the property subject to the Murphy mortgage. In Massachusetts, a mortgage is a "convey-

---

9. The official comment for § 3–309(a)(1)(B) of the Uniform Commercial Code explains that:
   Subsection (a) is intended to reject the result in *Dennis Joslin Co. v. Robinson Broadcasting Corp.,* 977 F.Supp. 491 (D.D.C. 1997). A transferee of a lost instrument need prove only that its *transferor* was entitled to enforce, not that the transferee was in possession at the time the instrument was lost.
   Official Comment to U.C.C. § 3–309 (emphasis added).

ance made for the purpose of securing performance of a debt or obligation." Mass. Gen. Laws ch. 260, § 35. "Absent a provision in the mortgage instrument restricting transfer ... a mortgagee may assign its mortgage to another party." *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 292 (1st Cir.2013). The Murphy mortgage contained no restriction on transfer. The trustee, by virtue of the original recording, had constructive notice of the existence of the Murphy mortgage held by Green. Green's right to enforce the mortgage was challenged by the trustee because, in his view, Green lacked the ability to enforce the Murphy note under Mass. Gen. Laws ch. 106, § 3–309. According to the trustee, "[u]nless a mortgage secures an obligation, it is a nullity." *In re D & S Contractors, Inc.*, 422 B.R. 1, 4 (Bankr.D.Mass.2010) (quoting *Restatement (Third) Prop.: Mortgages* § 1.1, cmt. (1997)). The bankruptcy court concluded the mortgage was not a nullity, despite the impact of Mass. Gen. Laws ch. 106, § 3–309, because it secured the note held by Hansbury before it was lost.

 The fact that the note and mortgage may have been held by different entities did not affect the outcome. "In Massachusetts, the note and the mortgage need not be held by the same entity. The two instruments exist on separate planes, and the transfer of the note does not automatically transfer the mortgage." *Culhane*, 708 F.3d at 292 (citing *Eaton v. Fed. Nat'l Mortgage Ass'n*, 462 Mass. 569, 969 N.E.2d 1118, 1124–25 (2012); *Lamson & Co. v. Abrams*, 305 Mass. 238, 25 N.E.2d 374, 378 (1940)). When the note and mortgage are held by separate entities, "the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage...." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40, 54 (2011). Thus, if Green was not the true holder of the note, it held the

mortgage in trust for the one who was. This is so because "the mortgage (no matter who holds it) is always subject to the note. As a hoary maxim teaches, 'the debt is the principal and the mortgage an incident.' In other words, the note is the beneficial interest and the mortgage is the legal interest." *Culhane*, 708 F.3d at 292 (quoting *Morris v. Bacon*, 123 Mass. 58, 59 (1877)).

Ergo, a mortgagee without a note lacks authority to foreclose on his own behalf. *Eaton*, 969 N.E.2d at 1126. But Green prevails here because he did not attempt to foreclose the mortgage. Green's lien attached to the proceeds of sale. Green now holds those proceeds for the true holder of the note.

The question of who may be the true holder of the note was not decided by the bankruptcy court. This question is to be decided, if at all, in a non-bankruptcy forum. Pending such a determination, Green holds the proceeds in trust.

## CONCLUSION

For the reasons given above, we **AFFIRM** the amended judgment of the bankruptcy court.